UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MITSUI SUMITOMO INSURANCE CO., LTD.,

    Plaintiff,

v.

SHAUGHNESSY HEAVY INDUSTRIES, INC.,

    Defendant.

No. C04-1666MJP

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION TO FILE A SUR-REPLY

    This case comes before the Court on Defendant Shaughnessy Heavy Industries' ("Shaughnessy") Motion for Summary Judgment. Plaintiff Mitsui Sumitomo Insurance Co. ("Mitsui") brought this suit against Defendant seeking to recover damages accrued in August 2002 when Shaughnessy was moving a large Fuji electrical transformer sold to the Bonneville Power Administration ("BPA") by Sumitomo Corporation USA ("Sumitomo"), Mitsui's insured. During the move, Shaughnessy hoisted the transformer from a barge with a gantry crane system, which collapsed and seriously damaged the transformer, causing losses in excess of one million dollars. Shaughnessy claims that it is not liable for this loss because Mitsui had waived subrogation from inland carriers in its contract with Sumitomo and that this waiver covered Shaughnessy. In the alternative, Shaughnessy claims that it relied on statements from Sumitomo's agent UTOC that it was covered by the waiver of subrogation and Mitsui should be equitably estopped from pursuing this action against Shaughnessy on the basis of these representations. Mitsui counters that Shaughnessy's contract with UTOC, which made no mention of subrogation, should govern this matter and that Shaughnessy does

ORDER - 1

not meet the elements required for equitable estoppel.         Mitsui also argues that even if the subrogation clause in the contract between Mitsui and Sumitomo creates a third party beneficiary status for Shaughnessy, Mitsui may proceed with this claim because under Japanese law a third-party beneficiary may not reap the benefits of its status unless it notifies the parties to the contract that it plans to do so and Shaughnessy did not fulfill this obligation.  Having reviewed all of the pleadings and documents associated with this motion, the Court finds that Japanese law governs the contract between Mitsui and Sumitomo, which creates an issue of material fact as to the validity of the waiver of subrogation upon which Defendant relies.  Similarly, issues of fact exist as to the Defendant's reliance on the doctrine of collateral estoppel and as to the parties' rights under the contract between Shaughnessy and UTOC.  For these reasons, the Court must DENY Defendant's Motion.  The Court GRANTS Plaintiff's Motion for leave to file a Sur-reply because Defendant did not raise the issue of the timeliness of Plaintiff's notice of a Japanese law issue until its Reply.

## BACKGROUND

In December 2001, Fred McFall of Shaughnessy and Shigeo Kuriki of UTOC signed a contract that provided for the transport of six Fuji transformers to their final destinations in the United States.  The transformers were to be shipped overseas from Japan in two separate shipments, one of which would be delivered to the port in Everett, WA, and the other to be delivered to the port in Portland, OR.  The shipment delivered to Everett would ultimately be transported to Bothell, WA and the shipment delivered to Portland was destined to be delivered by barge and truck to the BPA Pearl substation in Wilsonville, OR.  UTOC had engaged Shaughnessy to transport both shipments of transformers from their arrival at the U.S. ports to their final U.S. destinations.  A separate entity was responsible for the overseas transport of the transformers.  Kuriki and McFall had engaged in eight months of negotiations leading up to the formation of this contract.  (Pl's Resp. at 3).  The contract executed between Shaughnessy and UTOC provided that, "Shaughnessy shall be liable to Customer only for direct damage caused by Shaughnessy's negligence or fault, said negligence or fault not to be presumed, but to be affirmatively established." (McFall Decl., Ex. 1).  This same contract also

contained clauses excluding marine insurance, requiring Shaughnessy to carry comprehensive general liability insurance in the amount of $1,000,000 and declaring the parties' intention that this contract represented the full and final agreement between the parties. (Id.).

The first shipment of transformers was delivered to the port of Everett, WA, in March 2002 and Shaughnessy performed the overland transport of this shipment from the port to the Sno-King power station in Bothell, WA, without mishap. In spring and early summer of 2002, Shaughnessy was finishing final preparations for receipt of the second set of transformers at the port in Portland. During these preparations, Shaughnessy received notice from Bernert towing, the barge company with whom it contracted to move the transformers up the river to Wilsonville, that Shaughnessy would have to provide the crew for the barges and take responsibility for the barges' operation during the transport of the transformers. As a result of this arrangement, Bernert required Shaughnessy to procure protection and indemnity insurance. Shaughnessy obtained the required insurance for the barges from Arthur J. Gallagher & Co., its regular insurance broker. The broker was able to obtain the requisite insurance from Navigators Insurance Co., but only on the condition that Shaughnessy and Bernert be named as additional insureds on the marine cargo policy covering the transformers.

Because the contract between UTOC and Shaughnessy excluded marine cargo insurance, Mr. McFall contacted Mr. Kuriki to talk about this issue. After several exchanges Mr. Kuriki faxed Mr. McFall a letter stating:

> We confirmed Mitsui Sumitomo Insurance Company which conditions is [sic] waiver of subrogation. Insurance covered from Fuji factory to Peral [sic] substation including offloading and staging operation. Your company name and also UTOC name [sic] is not mentioned, but insured as inland carrier. Please trust our comments.

(McFall Decl., Ex. 2). This letter was signed by Mr. Kuriki, who attached a copy of the Marine Cargo Policy covering the second shipment of transformers. (McFall Decl., Ex. 2 at 11). This document bears Mitsui's letterhead and lists Sumitomo Corporation as the name of the assured, specifies the transformers as the insured cargo, lists the vessel upon which the cargo was transported and the port to which the cargo was bound. The policy also states that the cargo was destined to

ORDER - 3

interior points in the United States.  Under the space on the policy listing the conditions of coverage, the policy reads:

> ALL RISKS
> WAIVER OF SUBROGATION CLAUSE
> THIS COMPANY AGREES TO WAIVE SUBROGATION AGAINST THE INLAND CARRIERS, IN RESPECT OF LOSS OF OR DAMAGE TO THE INSURED INTEREST, UNLESS ATTRIBUTED TO THE INLAND CARRIERS' WILFUL MISCONDUCT AND OR GROSS NEGLIGENCE WHILST SUCH INTEREST IS IN THEIR CUSTODY FOR THE PERIOD COVERED BY THIS POLICY.

(Id.).

After receipt of these faxes from Mr. Kuriki, Shaughnessy proceeded with the inland transport of the second shipment of transformers.  During the offloading of the second transformer in this shipment from the barge to the truck, the gantry crane being used to lift the transformer collapsed, causing the transformer to fall.  The fall resulted in substantial damage to the transformer, which is the subject of this lawsuit.

## ANALYSIS

**I. Summary Judgment Standard**

This matter is before the Court on Defendant's motion for summary judgment.  Summary judgment is not warranted if a material issue of fact exists for trial.  Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996).  The underlying facts are viewed in the light most favorable to the party opposing the motion.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "Summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). However, once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  To discharge this burden, the nonmoving party

cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. Id. at 324.

**II. Can Shaughnessy be considered a third-party beneficiary under the insurance policy between Mitsui and Fuji Logistics?**

Shaughnessy is moving for summary judgment in this case on the basis of the Marine Cargo Insurance policy between Sumitomo Corporation and Plaintiff Mitsui. Shaughnessy argues that the language under the conditions portion of this document creates a class of third-party beneficiaries to which Shaughnessy, as an inland carrier of the transformers, belongs. Because it is a member of this class, Shaughnessy claims that Mitsui waived subrogation against it for any damages caused that are not attributable to willful misconduct or gross negligence on Shaughnessy's part. Plaintiff argues that the insurance policy is governed by Japanese law and that Japanese law allows the parties to a contract to waive a waiver of subrogation if no third-party beneficiary has notified the contracting parties that it plans to rely on the waiver. In order to decide whether or not Shaughnessy is protected by the waiver of subrogation clause in Mitsui's policy for Sumitomo, this Court must first examine what law governs the policy and then determine the rights of third-party beneficiaries under that law.

**A. What Law Governs the Insurance Policy Between Sumitomo and Mitsui?**

**1. Under Fed. R. Civ. P. 44.1, Did Plaintiff Raise the Foreign Law Issue in an Untimely Manner?**

Defendant claims that Plaintiff has failed to give adequate notice under Fed. R. Civ. P. 44.1 regarding its intention to rely on foreign law. The Rule states:

> A party who intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or other reasonable written notice. The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination shall be treated as a ruling on a question of law.

(Fed. R. Civ. P. 44.1). Defendant states that Plaintiff's alleged failure to give adequate notice under this Rule results in a waiver of any arguments that it might make under foreign law and that the Court is entitled to infer that the law of Japan is the same as that of the forum state. (Def's Reply at 7).

Plaintiff filed a motion for leave to file a Sur-reply to address the issue of whether or not its notice regarding the foreign law issue is timely. The Court GRANTS Plaintiff leave to file this motion because Defendant first raised the timeliness issue in its Reply in support of its summary judgment motion and Plaintiff should be given a chance to respond.

The reasonable notice requirement of Rule 44.1 is meant to prevent unfair surprises regarding foreign law issues for the parties and for the Court. DP Aviation v. Smiths Industries Aerospace and Defense Systems, Ltd., 268 F. 3d 829, 847 (9th Cir. 2001). The Ninth Circuit has held that where a party does not give notice of the foreign law issue in the pleadings, it should generally be given before or during the pretrial conference, though some exceptions do apply. Id. There is no set cut-off date for this notice. Under the law of this Circuit, the notice must simply be reasonable and be given as early as practicable. Id.

Plaintiff meets these requirements. The trial date in this case is currently scheduled for May 22, 2006 and the pre-trial conference for May 12, 2006. Plaintiff states that it did not raise the issue of Japanese law in its pleadings because it was not aware at the time the case was filed that Defendant would raise the waiver of subrogation as an affirmative defense in this matter. Plaintiff points out that it raised the issue in its Response to Defendant's motion for summary judgment, which is the first point at which this issue became pertinent to this case. Defendant argues that the Court should rule that Plaintiff's notice was unreasonable because Defendant did not have adequate time to research Japanese law and file its Reply in the time frame for briefing set forth in Local Civil Rule 7. However, Defendant did not ask this Court for an extension of its deadline and there is still time to address this issue appropriately during the course of this case. For this reason, Plaintiff's notice was reasonable and the Court will evaluate whether or not Japanese law should govern the Marine Cargo Insurance Policy between Mitsui and Sumitomo.

**2. Which Law Applies?**

In Washington state, when a contract does not specify on its face the law under which it should be construed, courts look to five factors to make this determination: "(a) the place of

ORDER - 6

contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." Mulcahy v. Farmers Ins. Co. Of WA, 152 Wn. 2d 92, 101, 95 P. 3d 313 (2004). In this case, these factors weigh largely in favor of Japanese law as the law that should be used to construe the marine cargo insurance policy.

Plaintiff states that the contract was negotiated in Yokohama, Japan, that benefits were paid under the policy in Japan, and that both Mitsui and Sumitomo are Japanese companies with their principle place of business in Japan. For these reasons, it argues, Japanese law ought to apply to the marine cargo insurance policy at issue here. Plaintiff also notes that the transformers, which are the subject matter of the contract, moved through various locations during the period covered by the policy and that this factor should not weigh heavily in the analysis. (Pl's Resp. at. 17-18). Defendant argues that Plaintiff's analysis is wrong and that the Court ought to apply either Washington or Oregon law to construe the policy. Defendant quotes language from Mulcahy stating that the five factors listed above must be "evaluated according to their relative importance with respect to the particular issue." Id. While Defendant is correct that the issue in this case is the waiver of subrogation clause, the factors favoring application of Washington or Oregon law that Defendant lists concern Shaughnessy's claim that its interest in the waiver of subrogation clause is vested, rather than the formation of the contract that gives rise to this claim. Because most of the contacts associated with marine cargo insurance policy are still overwhelmingly Japanese, the Court will apply Japanese law to construe this contract between Mitsui and Sumitomo.

**B. What are the Rights of the Parties under Japanese Law?**

Rule 44.1 of the Federal Rules of Civil Procedure gives the Court wide latitude in deciding which sources to look to for authority on foreign law issues. Plaintiff has presented a statute and a treatise, which it claims are authoritative on the issue of whether or not Sumitomo's waiver of Mitsui's waiver of subrogation of inland carriers is valid. According to these sources, Shaughnessy's right as a third-party beneficiary under the marine cargo insurance policy does not vest until

ORDER - 7

Shaughnessy notifies a party to the policy that it plans to rely on the benefit secured for it under the contract.  Until that time, any of the parties to the contract may waive a third-party beneficiary's rights.  (See Jordan Decl., Ex. AA-BB; Ikuya Fujii Decl.).  Plaintiff Mitsui claims that Defendant Shaughnessy did not fulfill the notice requirement under this law before Sumitomo waived the waiver.  For this reason, argues Mitsui, Defendant is liable for its alleged negligence under the contract between UTOC and Shaughnessy.

As noted above, Defendant states that it did not have time to research this foreign law issue.  Although the Court is ruling that the contract between Mitsui and Sumitomo is governed by Japanese law, this is a very limited ruling.  The Court is refraining from making any other ruling as to the legal merits of this case under Japanese law because there appear to be too many issues of fact and of law that remain unresolved at this time.

**IV. Does the Doctrine of Equitable Estoppel Protect Shaughnessy?**

Defendant has also claimed that the court should grant summary judgment on the basis of Shaughnessy's reasonable reliance on the representations of Mr. Kuriki that Shaughnessy was covered by the waiver of subrogation in the marine cargo policy.  However, the Court may not grant summary judgment on the basis of this claim either.  This claim is inappropriate for summary judgment because it is unclear that Shaughnessy's reliance on a statement of a person who did not directly represent either Sumitomo or Mitsui was reasonable.  The reasonableness of Shaughnessy's reliance on Mr. Kuriki's fax is an issue of fact that is more properly resolved by a jury.

**V. What are the Parties' Rights Under the Contract Between Shaughnessy and UTOC?**

Having determined that interpretation of the contract between Mitsui and Sumitomo depends upon Japanese law, but foregoing a ruling on the merits of the parties' claims under Japanese law at this time, the Court does not find it appropriate to make a ruling regarding the parties' rights under the contract between Shaughnessy and UTOC because of the outstanding issues of law and fact in this case.

CONCLUSION

1
2
3
4
5
6
7
8

The Court GRANTS Plaintiff's Motion to file a Sur-reply because Defendant did not raise the issue of the timeliness of Plaintiff's notice of a Japanese law issue until its Reply. Regarding Defendant's summary judgment motion, the Court finds that Japanese law governs the contract between Mitsui and Sumitomo, which creates an issue of material fact as to the validity of the waiver of subrogation upon which Defendant relies. Similarly, issues of fact exist as to the Defendant's reliance on the doctrine of collateral estoppel and the parties' rights under the contract between UTOC and Shaughnessy. For these reasons, the Court must DENY Defendant's Motion. The Clerk is directed to send copies of this order to all counsel of record.

9
10

Dated this 17th day of January, 2006.

11
12
13
14
15

*[signature]*

Marsha J. Pechman
United States District Judge

16
17
18
19
20
21
22
23
24
25
26

ORDER - 9