1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MITSUI SUMITOMO INSURANCE CO., LTD.,

Plaintiff,

v.

SHAUGHNESSY HEAVY INDUSTRIES, INC.,

Defendant.

No. C04-1666MJP

ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT AND STRIKING
PLAINTIFF'S LATE-FILED CROSS-
MOTION

This case comes before the Court on Defendant Shaughnessy Heavy Industries'

("Shaughnessy's") Motion for Summary Judgment (Dkt. No. 39) and Plaintiff's Cross-Motion for

Dismissal of Defendant's Waiver of Subrogation Defense (Dkt. No. 43). Having considered the

parties' motions and all documents and exhibits attached thereto, the Court DENIES Defendant's

Motion for Summary Judgment. The Court also STRIKES Plaintiff's late-filed cross-motion. The

Court finds that Defendant Shaughnessy is correct that English law properly applies to the waiver of

subrogation clause. The Court also finds that Plaintiff's defense of rectification[1] is based only on

unilateral declarations, which do not satisfy Plaintiff's burden under English law. Having made these

findings, the Court concludes that the sole issues remaining for trial are the issues of the reasonable

foreseeability of Shaughnessy's reliance on the waiver of subrogation, whether Shaughnessy actually

relied on the waiver, and, if so, the applicable period of reliance.

BACKGROUND

_____

[1]Rectification is an English law doctrine by which parties to a contract may correct a common
mistake that appears in the contract and which does not reflect their true intent. (Foss Decl. at 7).

ORDER - 1

Plaintiff Mitsui Sumitomo Insurance Co. ("Mitsui") brought this suit against Defendant seeking to recover damages accrued in August 2002, when Shaughnessy was moving a large Fuji electrical transformer sold to the Bonneville Power Administration ("BPA") by Sumitomo Corporation USA ("Sumitomo"), Mitsui's insured.  During the move, Shaughnessy hoisted the transformer from a barge with a gantry crane system, which collapsed and seriously damaged the transformer, causing losses in excess of one million dollars.  Shaughnessy claims that it is not liable for this loss because Mitsui had waived subrogation from inland carriers in its contract with Sumitomo and that this waiver covered Shaughnessy.

Shaughnessy received notice of the waiver of subrogation clause contained in the insurance contract between Mitsui and Sumitomo when Fred McFall of Shaughnessy contacted Shigeo Kuriki of UTOC (who contracted on behalf of Sumitomo for Shaughnessy to move the transformers), regarding whether Shaughnessy was named as an additional insured on the policy between Sumitomo and Mitsui.  Mr. McFall made his inquiry on July 24, 2002.  Mr. Kuriki replied via fax on July 25, 2002:

> We confirmed Mitsui Sumitomo Insurance Company which conditions is [sic] waiver of subrogation.  Insurance covered from Fuji factory to Peral [sic] substation including offloading and staging operation.  Your company name and also UTOC name [sic] is not mentioned, but insured as inland carrier.  Please trust our comments.

(McFall Decl., Ex. 2).  This letter was signed by Mr. Kuriki, who attached a copy of the Marine Cargo Policy covering the second shipment of transformers. (McFall Decl., Ex. 2 at 11). The clause on the Marine Cargo Policy, upon which Shaughnessy relies, reads as follows:

> ALL RISKS
> WAIVER OF SUBROGATION CLAUSE
> THIS COMPANY AGREES TO WAIVE SUBROGATION AGAINST THE INLAND CARRIERS, IN RESPECT OF LOSS OF OR DAMAGE TO THE INSURED INTEREST, UNLESS ATTRIBUTED TO THE INLAND CARRIERS' WILFUL MISCONDUCT AND OR GROSS NEGLIGENCE WHILST SUCH INTEREST IS IN THEIR CUSTODY FOR THE PERIOD COVERED BY THIS POLICY.

1   (Id.).  On January 17, 2006, this Court issued an Order in this matter deciding that Japanese law

2   applied to the interpretation of the Marine Cargo Policy, but withholding judgment on what would be

3   the result of the liability question under Japanese law.  This ruling was based on the premise that the

4   Mitsui insurance policy contained no choice of law clause.

5          The parties are now before the Court again, having discovered a nearly illegible English

6   choice-of-law clause at the bottom of the insurance policy (Id.).  As transcribed by the parties, the

7   operative portion of this clause reads, "[t]his Insurance is understood and agreed to be subject to

8   English law and usage as to liability for and settlement of any and all claims." (Def's Mot. at 9; Pl's

9   Opp. at 10). Defendant Shaughnessy moves this Court a second time for summary judgment claiming

10  that Shaughnessy is entitled to the protection of the waiver of subrogation clause under English Law.

11  Shaughnessy also argues that, should the Court decide to apply Japanese law, its communications

12  with UTOC in July 2004, should constitute notice to Mitsui that it planned to rely on the waiver of

13  subrogation clause.  In its Reply brief, Shaughnessy also argues that Mitsui's Japanese law arguments

14  and cross-motion should be struck because Mitsui has allegedly not been candid with the Court and

15  the cross-motion was late-filed. Mitsui, on the other hand, argues that Shaughnessy's English Law

16  and estoppel arguments should be stricken as an improper motion for reconsideration.  In the

17  alternative, Mitsui contends that the English law clause only applies to issues regarding "liability for,

18  and settlement of, claims for coverage submitted by Mitsui's assured, Sumitomo. . .," while Japanese

19  law applies to the interpretation of the contractual relationship between Mitsui and Sumitomo. (Def's

20  Opp. at 10).  Plaintiff also argues that should the Court apply English law to the waiver of

21  subrogation clause, several issues of material fact will remain, precluding summary judgment.

22                                            ANALYSIS

23  **I.  Summary Judgment Standard**

24         This matter is before the Court on Defendant's motion for summary judgment.  Summary

25  judgment is not warranted if a material issue of fact exists for trial.  Warren v. City of Carlsbad, 58

26  F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996).  The underlying facts are viewed

in the light most favorable to the party opposing the motion.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "Summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). However, once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial.  Id. at 324.

## II. Should the Court Strike Shaughnessy's English Law and Estoppel Arguments?

Mitsui first argues that Shaughnessy should be precluded from making its argument regarding the applicability of English law or the doctrine of estoppel because the Court previously determined that Japanese law applies to the contract at issue and because Shaughnessy has made its estoppel arguments in its previous motion for summary judgment.  Mitsui is correct regarding the estoppel argument–the Court has already ruled on Shaughnessy's estoppel arguments, which are essentially the same as the ones put forth in its previous motion.  However, Mitsui's argument regarding Shaughnessy's English Law arguments are disingenuous, at best.  Neither party brought the English law clause in question to the Court's attention in the previous round of briefing.  This is true, even though the contract is a form contract of Mitsui's and Plaintiff, presumably, should have known about the contents of the contract.  For this reason, Defendant is also calling on the Court to levy sanctions against Plaintiff for not having been forthright at an earlier time about the English choice of law clause.

It is not fair for Plaintiff to claim both that it did not see the clause and also argue that Defendant should have seen it earlier.  Likewise, Defendant admits the clause is nearly illegible and

1  cannot benefit by sanctions against Plaintiff, yet not be held to account for its own lack of due

2  diligence.  The Court finds that the illegibility of the contract creates a newly discovered material fact

3  allowing the Court to examine the parties' arguments regarding the application of English law to this

4  case.

5       Although the Court is refraining from sanctioning Plaintiff at this time, the Court notes that

6  the clause in question is part of the Plaintiff's form contract.  Because the Plaintiff did not discover

7  the choice-of-law clause earlier during this litigation, the parties have now engaged in two rounds of

8  briefing, one of which was entirely superfluous.  The Court does not look kindly on parties who

9  waste its resources in this manner and warns both parties, especially Plaintiffs, to examine evidence

10  carefully before filing briefing in the future.

11  **III.  Is the Contract Governed by Japanese or English Law?**

12       **A.  Scope of the English Law Clause**

13       Plaintiff Mitsui argues that the English Law Clause contained in the Marine Cargo Policy is

14  too narrow to be construed to govern the waiver of subrogation clause at issue in this case.  Plaintiff

15  notes that the choice of law clause provides, "[t]his *Insurance* is understood and agreed to be subject

16  to English law and usage as to *liability for and settlement of any and all claims.*" (Pl's Opp. at 10,

17  emphasis added).  By limiting the choice of law clause to cover only insurance, reasons Plaintiff, the

18  contracting parties left the construction of the contract itself up to the law of the state most closely

19  related to the contract, or Japan.  Defendant Shaughnessy, however, argues that the English choice of

20  law clause is the only demonstrable evidence of the intent of the parties regarding which state's law

21  would govern their agreement.  For this reason, Shaughnessy argues, the Court should give broad

22  effect to the choice of law clause.  In making this argument, Shaughnessy points out English law's

23  reluctancy to apply more than one set of laws to a given contract. (Def's Mot. at 11).

24       In determining choice of law issues in diversity cases, federal courts apply the choice of law

25  rules of the forum state.  S.A. Empresa de Viacao Aerea Rio Grandense v. Boeing Co, 641 F. 2d 746,

26  749 (9th Cir. 1995).  In Washington state, choice of law clauses will generally be given effect, unless

they conflict with a fundamental policy of the state.  <u>McGill v. Hill</u>, 31 Wn. App. 542, 547 (1982);
<u>See also</u> <u>Parrot Mechanical Inc. v. Rude</u>, 118 Wn. App. 859, 864 (2003).  In determining the intent of
the parties, Washington courts take into account both the plain language of the contract, as well as
extrinsic evidence regarding the contract's formation. <u>Berg v. Hudesman</u>, 115 Wn. 2d 657, 667
(1990).

In the matter at hand the plain language of the Marine Cargo Policy supports the view that the
parties to the contract intended for the English choice of law clause to apply to liability for and
settlement of insurance claims.  The extrinsic evidence regarding contract formation that is available
to the Court both supports and discourages a broader reading of the English choice of law clause.  In
his deposition, Takaaki Nakamura of Mitsui Sumitomo Insurance testified that, "this policy itself is
governed by English law." (Nakamura Dep. at 40, ln. 23).  Earlier in his deposition, Mr. Nakamura
had testified to the advantages Mitsui Sumitomo derives from designating English law as the law
governing its policies.  He stated, "this business involves a lot of export and import transactions, and
consignees. . .would understand English.  If I may, I would like to add that all our policies are based
on the law of England. . ." (<u>Id</u>. at 18-19, lns. 22-25 & 1-2).  Nonetheless, in a declaration submitted
to this Court by Plaintiff, Mr. Nakamura backs away from broad interpretation of the English choice
of law clause, testifying that:

> [b]oth the Open Policy and the Marine Cargo Policy contain a choice-of-law provision
> that states: 'This insurance is understood and agreed to be subject to English law and
> usage as to liability for and settlement of any and all claims.' This is a standard choice-
> of-law provision intended to apply only to Mitsui Sumitomo's liability for and
> settlement of claims submitted by its assureds.  It was Mitsui Sumitomo's intent and
> understanding that Japanese law would govern all other issues related to the policies
> applicable to the transformer shipment, such as waiver of subrogation issues.

(Nakamura Decl., ¶4).

In applying the <u>Berg</u> rule to the contract, the Court keeps in mind that Washington law
emphasizes focusing on the "objective manifestations of the agreement, rather than on the
unexpressed subjective intent of the parties." <u>Hearst Communications, Inc. v. Seattle Times Co.</u>, 154

1   Wn. 2d 493, 503 (2005) (citations omitted).  Additionally, "evidence that varies, contradicts or

2   modifies the written language of the contract" is not admissible extrinsic evidence. GO2NET, Inc. V.

3   C I Host, Inc., 115 Wn. App. 73, 84 (2003).  Based on these principles, the Court finds that the

4   English law clause governs the current dispute.

5         The issue before the Court concerns whether or not the waiver of subrogation clause applies

6   in this case.  The doctrine of subrogation is an equitable doctrine aimed at preventing unjust

7   enrichment.  Touchet Valley Grain Growers, Inc. v. Opp & Siebold Gen. Constr., 119 Wn. 2d 334,

8   341 (1992). Subrogation allows an insurer to step "into the shoes" of the insured to recover from the

9   party that caused a given loss. (Id.). A waiver of subrogation, therefore, affects the scope of the

10  insurance and falls squarely within the purview of the English choice of law clause in this matter.  For

11  this reason, the Court need not decide whether or not the choice of law clause is susceptible to a

12  broader reading.

13        **B.  Foreign Law Analysis**

14        Having decided that English law applies to the current dispute, the next step is for the Court

15  to decide whether or not that clause affords Shaughnessy the protection it claims under English law.

16  "The court, in determining foreign law, may consider any relevant material or source, including

17  testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence.

18  The court's determination shall be treated as a ruling on a question of law." Fed. R. Civ. P. 44.1.

19  **IV.  Plaintiff's Claim that the Waiver of Subrogation Clause Was a Clerical Mistake**

20        Plaintiff Mitsui argues that the waiver of subrogation clause in this matter was a clerical

21  mistake and that the waiver of the waiver of subrogation was an attempt to remedy that mistake.

22  Plaintiff claims that the waiver of subrogation was intended to be limited to Fuji Logistics[2] only.

23  Under English law, the parties to a contract may succeed on an action to rectify the contract when

24  there is an established common intention of the contracting parties and that "the agreement does not

25

26        [2]Fuji Logistics is an agent of Sumitomo, and was responsible for arranging the shipment of the
    transformers in question. (Dkt. No. 14 at 3).

ORDER - 7

accurately represent the true agreement of the parties." (Foss Decl., Ex. 13, ¶35).  Where the mistake is a unilateral one, rectification cannot be justified. (Id.).

When asked about Mitsui's decision to obtain Sumitomo's waiver of waiver of subrogation, Mitsui's representative Takaaki Nakamura testified in deposition that,

> [Mitsui's] understanding of this waiver was that the waiver was applicable only to Fuji Logistics.  Later on, at one point in time, we discovered a clerical mistake which resulted in the statement of waiver of claims for damages against inland carriers as well, which was reflected in the policy, and that was the reason there was some confusion. . .That was the circumstances [sic] that the decision was made to obtain these two forms to clarify the intention of Fuji Logistics at the time of our acceptance of insurance for them.

(Nakamura Dep. at 16-17, lns. 19-25, 1-3).  Mitsui only addresses the alleged mistake very briefly on page 12 of its opposition.  However, nowhere in the materials submitted to this Court can the Court find any evidence reflecting the intent of Sumitomo regarding the waiver of subrogation clause.  Under English law, the burden appears to be on the party seeking rectification to produce evidence as to the mutual mistake or correct intent of the contracting parties. (Foss Decl., ¶31, Ex. 13 at ¶35).  Moreover, English courts cannot base rulings on individual parties' statements of subjective intent. (Foss Decl., Ex. 13 at ¶29).  Because Plaintiff in this matter has produced no evidence in this matter regarding Sumitomo's true intent as to the waiver of subrogation clause, the Court cannot rectify the alleged mistake and must proceed on the "natural and ordinary meaning" of the contractual language as it has been presented to this Court. (Id.).

## V. Waiver of Subrogation Under English Law

Under the English Contracts (Rights of Third Parties) Act 1999 ("the Act"), section 1(3), a third party to a contract may, "in his own right enforce a term of the contract if. . [the third party is] identified in the contract by name, as a member of a class or as answering to a particular description. . ." (First Kendall Decl., Ex. 4 at 2).  Additionally, the Act provides:

> the parties to the contract may not, by agreement, rescind the contract, or vary it in such a way as to extinguish or alter his entitlement under that right, without consent if-
> (a) the third party has communicated his assent to the term to the promisor,
> (b) the promisor is aware that the third party has relied on the term, or
> (c) the promisor can reasonably be expected to have foreseen that the third party would rely on the term and the third party has in fact relied on it. . .

1

2   (Id.).  Under section 1(7) of the Act, a promisor is "the party to the contract against whom the term is

3   enforceable by the third party. . ." (Id.). In this matter, the language of the waiver of subrogation

4   names "inland carriers" as the class to be protected by the waiver.  Neither party disputes that

5   Shaughnessy fits this description and satisfies section 1(3) of the Act. (Foss Decl. at 7).  Likewise,

6   both parties acknowledge that Mitsui is correctly designated as the "promisor" under section 1(7) of

7   the Act for the purposes of this case. (First Kendall Decl. at 4; Pl's Opp. at 23).

8          The parties do dispute, however, whether or not Mitsui was aware that Shaughnessy relied on

9   the term or whether Mitsui could have been reasonably expected to have foreseen Shaughnessy's

10   alleged reliance and whether or not reliance actually occurred.  Defendant Shaughnessy argues that

11   the communication of Fred McFall to Mr. Kuriki of UTOC on July 24, 2002, conclusively

12   demonstrates its reliance on the waiver of subrogation before agreeing to move the transformer.

13   However, Shaughnessy does not rebut Plaintiff's argument that a communication to Sumitomo's

14   agent UTOC does not necessarily constitute a communication to Mitsui about Defendant's reliance.

15   Neither party has provided the Court with conclusive doctrines of English law or evidence on these

16   issues.  Mitsui also raises the issue of whether or not, under the circumstances of this case,

17   Shaughnessy's reliance on the waiver of subrogation was only during the barging or during the whole

18   period of transport for which Shaughnessy was responsible.  Having found that English law properly

19   applies to the waiver of subrogation clause and that Plaintiff's defense of rectification is based on

20   unilateral declarations, the Court concludes that the sole issues remaining for trial are the issues of

21   reasonable foreseeability, reliance, and period of reliance.

22   **VI.  Shaughnessy's Motion to Strike Mitsui's Cross-Motion, to Continue this Matter, and to**

23   **Have Oral Argument**

24          Shaughnessy argues that Plaintiff's Cross Motion is untimely.  The dispositive motion

25   deadline in this matter was April 18, 2006.  (Dkt. No. 31).  Plaintiff's Response was filed on May 8.

26   Shaughnessy is correct that Mitsui's motion to dismiss Shaughnessy's defense of the waiver of

1    subrogation was filed almost three weeks late.  For this reason, the Court must STRIKE the cross-

2    motion and caution Plaintiff about respecting the deadlines set by this Court.

3                                        CONCLUSION

4        The Court DENIES Defendant's Motion for Summary Judgment. The Court also STRIKES

5    Plaintiff's late-filed cross-motion.  The Court finds that Defendant Shaughnessy is correct that

6    English law properly applies to the waiver of subrogation clause. The Court also finds that Plaintiff's

7    defense of rectification is based only on Mitsui's unilateral declarations, which do not satisfy

8    Plaintiff's burden under English law.  Having made these findings, the Court concludes that the sole

9    issues remaining for trial are the issues of the reasonable foreseeability of Shaughnessy's reliance on

10   the waiver of subrogation, whether Shaughnessy actually relied on the waiver, and, if so, the

11   applicable period of reliance.

12       Dated this 15th day of June, 2006.

13

14

15

16                                                         Marsha J. Pechman
                                                           United States District Judge
17

18

19   -

20

21

22

23

24

25

26

ORDER - 10